## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **FEDERAL INSURANCE CO.** | ) | |
| **as subrogee of ONB Bank and Trust** | ) | |
| **Company,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 12-CV-30-JED-TLW** |
| | ) | |
| **JOHN HAYNES REYNOLDS, JR. et al.,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

### OPINION AND ORDER

The Court has for its consideration defendants' (Doc. 60) and plaintiff's (Doc. 59) motions for summary judgment. Supplemental briefs (Docs. 83, 84, and 87) have also been filed with respect to two issues per the Court's August 28, 2013 Order (Doc. 82). For the reasons discussed below, the Court denies both motions for summary judgment.

### BACKGROUND

This insurance subrogation case arises out of a lending relationship between two non-parties to this litigation – ONB Bank and Trust Company of Tulsa ("ONB Bank") and Collins & Reynolds, LLC ("C&R"), a local Tulsa builder. C&R had eight construction loans from ONB Bank, including a 2007 loan for a house to be built on 110th Street in Tulsa, Oklahoma (the "Property"). The 2007 construction loan was in the amount of $672,000. The four defendants, John Haynes Reynolds, Jr., John Haynes Reynolds, III, John H. Reynolds Jr. Trust, and Paul Collins were original guarantors of that loan and others.[1]

---

[1]   In the briefing and evidentiary materials, John H. Reynolds, Jr. is commonly referred to as "John Reynolds", and his son, John Haynes Reynolds, III, is commonly referred to as "Haynes Reynolds". The Court will do the same.

On March 7, 2010, a fire of unknown origin destroyed the home which was under construction at the Property. The mortgage and loan agreement between C&R and ONB Bank required C&R to maintain its own property damage insurance and to furnish ONB Bank with proof of coverage. C&R's insurance coverage for the Property expired in 2009 because it had not been correctly described in the collateral description provided to C&R's new insurance agent. ONB Bank's records indicate that, on March 5, 2009, the bank requested documentation verifying the existence of C&R's insurance coverage for the Property, but it was never provided with such documentation. John and Haynes Reynolds have testified that they were unaware that the policy for the Property had lapsed.

It became clear soon after the March 7, 2010 fire that there was a problem with C&R's insurance coverage on the Property. However, there was no final denial of coverage on the Property until February, 2011, nearly a year after the fire. At the time of the fire, ONB Bank had its own mortgage protection insurance through plaintiff Federal Insurance Company ("Federal"). This policy includes, among other things, "Mortgage Holder's Interest" coverage, which provides protection for errors by both the lender and the borrower. In April of 2011, Federal approved ONB Bank's claim under the policy based upon the provision relating to borrower error. Federal agreed to allow ONB Bank to keep the Property in exchange for an agreed reduction of ONB Bank's claim in the amount of $135,000 – the stipulated value of the lot on the Property. On May 17, 2011, Federal issued a payment of $513,572.62 to ONB Bank.[2]

Prior to Federal's payment to ONB Bank, all four defendants entered into an agreement with ONB Bank, referred to by the parties as the "Workout Agreement." The Workout Agreement primarily relates to the seven construction loans made by ONB Bank to C&R

---

[2] $513,572.62 is equal to the $658,572.62 principal balance minus $135,000.00 and the $10,000.00 deductible on the policy.

independent of the loan for the Property.   However, with respect to the Property, which the

Workout Agreement describes as "Note 0125", the agreement states as follows:

> The improvements on the real estate serving as collateral for this Note burned on or about the week of March 6, 2010, and the City of Tulsa removed all additional debris during October, 2010.   The fire is subject to numerous insurance claims and defenses.   At present, the principal balance owed is $658,573.00, without outstanding interest of $11,470.14 as of September 14, 2010 with per diem accrual of $100.62.   Note 0125 matured on June 23, 2010.   Notwithstanding any term, condition, concession or promise contained within this Agreement, Note 0125 and its associated obligations of the Debtor and Guarantors shall be unaffected, and all matters relating to the same shall be resolved outside of this Agreement.

(Doc. 60-3, Exhibit 12, at 2, italics omitted, underlining added).   The Workout Agreement again

reiterates that Note 0125 is not addressed within its four corners and adds that the "Debtor and

Guarantors shall remain liable to ONB for all principal and interest associated with this Note and

shall continue to cooperate fully with ONB, the respective insurance companies and all other

third parties in the collection of maximum insurance proceeds to the mutual benefit of the

parties…."   (*Id.*, at 6, underlining added).   As will be discussed later in this Opinion and Order,

the parties have vastly different views regarding the meaning of these two provisions of the

Workout Agreement.

   In July of 2011, Federal sent a letter to the defendants formally asserting its alleged right

of subrogation.    Not long thereafter, in October of 2011, ONB Bank and the defendants entered

into a settlement agreement specific to the Property.[3]   Pursuant to this settlement, ONB Bank

released the promissory note with respect to the Property; C&R deeded the Property to ONB

---

[3]    While Federal purports to dispute that ONB Bank and the defendants entered into a "settlement agreement," Federal provides no evidence which creates a dispute of fact as to whether such an agreement took place.

Bank in lieu of foreclosure; and the defendants jointly executed a new promissory note to ONB in the amount of $56,000.[4]

On January 27, 2012, Federal filed the instant lawsuit against John Haynes Reynolds, Jr., John Haynes Reynolds, III, and the John H. Reynolds Jr. Trust (collectively, the "Reynolds defendants").  On October 11, 2012, Federal filed an amended complaint (Doc. 34) which added Paul Collins as a defendant.  The Reynolds defendants now seek summary judgment as to Federal's claim for breach of the defendants' guaranties, asserting a number of defenses which the defendants allege relieve them from liability under the guaranties.  Federal likewise seeks summary judgment, arguing that it has submitted evidence to prove all the necessary elements of its claim.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  In considering a summary judgment motion, the courts determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 at 251-52.  The evidence of the non-movant is to be taken as true, and all justifiable inferences are to be drawn in non-movant's favor. *Anderson*, 477 U.S. at 255; *see Ribeau v. Katt*, 681 F.3d 1190, 1194 (10th Cir. 2012).  "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling

---

[4]   The $56,000 amount included $46,000 in interest, costs, and attorney fees that ONB Bank incurred in connection with the Property, but were not paid as a part of Federal's insurance payment, as well as the $10,000 deductible associated with the Federal insurance policy.

on a motion for summary judgment. . . ." *Anderson*, 477 U.S. at 255.   "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

 "When the moving party has carried its burden under Rule 56[a], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (citations omitted).  When the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Id.* (quotations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250.  In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Garratt v. Walker*, 164 F.3d 1249, 1251 (10th Cir. 1998).

### DISCUSSION

The Court's summary judgment ruling turns primarily on whether any of the affirmative defenses put forth by defendants in their motion for summary judgment have been conclusively established or whether a genuine dispute of material fact exists with respect to one or more of those defenses.  As such, the Court will first discuss the viability of defendants' alleged defenses.

## I.    Defendants' Motion for Summary Judgment

### A.  Subject Matter Jurisdiction

In a cursory manner, the defendants question whether the Court has subject matter jurisdiction over this lawsuit.  Specifically, defendants assert that ONB Bank – an entity that would destroy complete diversity if joined – is an indispensible party in this case pursuant to Fed. R. Civ. P. 19.

Under Rule 19, the Court must determine as an initial matter "whether the party is necessary to the suit and must therefore be joined if joinder is feasible. If the absent party is necessary but cannot be joined, the court must then determine under Rule 19(b) whether the party is indispensable. If so, the suit must be dismissed."  *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996).  The Court considers three factors in determining whether a party is necessary:

> (1) whether complete relief would be available to the parties already in the suit, (2) whether the absent party has an interest related to the suit which as a practical matter would be impaired, and (3) whether a party already in the suit would be subjected to a substantial risk of multiple or inconsistent obligations.

*Id*.

Here, the defendants suggest that they would be subject to inconsistent or duplicative claims were ONB Bank not joined.  Federal counters that ONB Bank has no claim against the defendants and, even if it did, relevant law would not permit double recovery against the defendants.  The Court agrees with Federal.  Indeed, it is the defendants who advance the position that ONB Bank has released the defendants from their guaranties.  Even were that not the case, ONB would not be permitted to seek the same recovery Federal asserts in this case. *See Weatherly v. Flournoy*, 929 P.2d 296, 299 (Okla. Civ. App. 1996) (citing *Dippel v. Hunt*, 517 P.2d 444, 448 (Okla. App. 1973)) ("when the smoke of controversy clears away much can be

6

said for the notion that it is really none of the tortfeasor's concern what rights might exist between the tortfeasor's victim and the latter's own insurance carrier, save to avoid subjection to more than one judgment—an event not possible under existing decisional law").  The Court further notes that ONB Bank's interests will not be impaired by adjudication of this suit and complete relief can be accorded among the current parties.  Accordingly, ONB Bank is not a necessary or indispensible party under Rule 19.

### B.  Whether the Workout Agreement Bars Federal's Claim

Defendants further argue that the Workout Agreement entitles them to summary judgment because, within that agreement, ONB Bank agreed that the defendants would be entitled to the "mutual benefit" of any insurance payment.  More specifically, the defendants contend that "ONB Bank effectively agreed to release or reduce its claims under the guaranties upon ONB Bank's future receipt of insurance proceeds, and Federal Insurance is bound by ONB Bank's promises."  (Doc. 87, at 2).  The defendants also point out that John Reynolds and Mike Feuerborn, a Senior Vice President of ONB Bank, have both testified that the Workout Agreement was intended to allow the defendants to benefit from any recoveries under the Federal insurance policy.  Federal has a directly contrary view of the Workout Agreement and argues that the agreement plainly states that the note related to the Property is not addressed within the agreement and that the agreement therefore cannot affect the rights of the parties with respect to that property.

As an initial matter, because the defendants seek to rely in part on verbal statements not contained within the Workout Agreement, the Court will address whether consideration of parol evidence is appropriate in interpreting the Workout Agreement.  "If the terms of a contract are unambiguous, clear and consistent, they are accepted in their plain and ordinary sense and the

contract will be enforced to carry out the intention of the parties as it existed at the time it was negotiated." *Whitehorse v. Johnson*, 156 P.3d 41, 47 (Okla. 2007). "In interpreting contracts, courts must view the document as a whole so as to give effect to every part of the contract and enable each clause to help interpret the others." *Nat'l Am. Ins. Co. v. Am. Re-Ins. Co.*, 358 F.3d 736, 740 (10th Cir. 2004) (citing 15 *Okla. Stat.* § 157). If a contract is ambiguous, the Court can admit parol evidence to aid in interpretation. *Fowler v. Lincoln County Conservation Dist.*, 15 P.3d 502, 507 (Okla. 2000). "Generally, the issue to which parol evidence has been admitted becomes 'a mixed question of law and fact to be determined by the trier thereof, whether court or jury.'" *Nat'l Am. Ins. Co.*, 358 F.3d at 740 (quoting *Harjo v. Harjo*, 247 P.2d 522, 526 (Okla. 1952)).

As evidenced by the parties' sharply differing positions, the meaning of the Workout Agreement, as it relates to the Property, is susceptible to multiple interpretations. On one hand, the agreement states that all obligations related to Note 0125 are "not addressed" within the agreement. However, the agreement immediately thereafter states that the parties agree to cooperate for the purpose of "the collection of maximum insurance proceeds to the mutual benefit of the parties." (Doc. 60-3, Exhibit 12, at 6). These provisions are problematic, as the agreement can be read to accommodate inconsistent ends. Federal's construction of the agreement would have the Court give no meaning to the agreement's statement regarding the parties' intention to obtain "mutual benefit" from the insurance proceeds. Such a construction is contrary to Oklahoma law, as the Court must give effect to the entire contract. *See Nat'l Am. Ins. Co.*, 358 F.3d at 740.

The precise meaning of the mutual benefit provision is ambiguous. As such, the Court finds it appropriate to consider parol evidence in attempting to ascertain the meaning of this

8

provision.  The defendants have submitted the affidavit of Haynes Reynolds, which states that "John Reynolds and I executed the Workout Agreement in reliance upon oral promises by Mike Feuerborn of ONB Bank that [C&R] and the four Guarantors would be the beneficiaries of any payments made by ONB Bank's mortgage insurance company to ONB Bank."  (Doc. 60-1, Exhibit 1, at ¶13).  John Reynolds also testified that he believed the Workout Agreement would permit the defendants to benefit from the Federal policy.  (Doc. 60-1, Exhibit 2, at 12).  In addition, Michael Feuerborn, testifying as a 30(b)(6) corporate representative of ONB Bank, testified as follows with respect to the Workout Agreement:

> Q      Do you see in the sixth and seventh lines that there's a reference to the collection of maximum insurance proceeds to the mutual benefit of the parties to this agreement?  Do you see that?
>
> A      Yes.
>
> Q      Now when you read that sentence, did you understand that to mean that the debtor and guarantors would benefit from any payment by Federal Insurance Company?
>
> A      Yes.
>
> Q      And that's what the bank was agreeing to?
>
> A      Yes.

(Doc. 60-1, Exhibit 3, at 34-35).  However, Feuerborn also testified that he did not believe he could waive Federal's rights and was not intending to do so when he entered into agreements with the defendants.  An email from ONB Bank's counsel to David Collins states that Note 0125 was "outside the scope" of the agreement, but was included for "purposes of completeness." (Doc. 66-5).  In addition, the correspondence submitted by Federal regarding the insurance issues which were pending at that time raises a question regarding which insurance policy is being referenced within the Workout Agreement.

Under Oklahoma law, "[a] subrogee steps into the shoes of the plaintiff 'subject to all legal and equitable defenses which the [tortfeasor] may have against the [plaintiff].'" *Employers Mut. Cas. Co. v. Mosby*, 943 P.2d 593, 595 (Okla. 1997) (quoting *Moore v. White*, 603 P.2d 1119, 1121 (Okla. 1979)). That is, "[a] subrogee acquires no rights greater than those of the party whose claim it has paid." *Id.* (citing *United States v. Munsey Trust Co.*, 332 U.S. 234, 242 (1947)). Assuming, *arguendo*, that ONB Bank entered into an agreement with the defendants to reduce its claim on the relevant note by the amount of any insurance payment, ONB Bank would be subject to a defense based upon the insurance payment if it were to subsequently sue on the note. Federal would likewise be subject to such a defense as a subrogee. The Court finds that, in light of the language of the Workout Agreement and evidentiary materials which constitute the relevant parol evidence, a genuine dispute of fact exists with respect to the meaning of the phrase "mutual benefit" as it exists within the Workout Agreement. As such, this issue should be determined by the trier of fact, a jury.

### C.  Whether Federal's Claim is Barred by an Alleged Release of the Guaranties and Note

The defendants next assert that ONB's release of Note 0125 and the related guaranties bars Federal's subrogation claim. Federal disputes the fact that a release of the guaranties ever occurred. In addition, Federal argues that, even assuming there was a valid release, the defendants had notice of Federal's subrogation claim at the time of the release and therefore it has no effect on that claim. The Court finds the issue of notice to be dispositive of this issue regardless of whether a release of the guaranties took place.

It is undisputed that the defendants had notice of Federal's subrogation claim in July of 2011. The settlement wherein the guaranties were purportedly released did not occur until October of 2011. Under Oklahoma law, once a third party against whom subrogation is sought

has notice of an insurer's intention to seek subrogation, a subsequent settlement between the insured and the third party does not extinguish the subrogation right of the insurer. *See Aetna Cas. & Sur. Co. v. Associates Transports, Inc.*, 512 P.2d 137, 142 (Okla. 1973) ("after [defendant] received notice of plaintiff's subrogation rights, it could not defeat them by settling with the assured alone").[5] As such, the purported post-notice release of the guaranties would not entitle the defendants to summary judgment on Federal's claim.

### D.  Whether Federal's Claim is Barred by the Doctrine of *Expressio Unius*

The defendants argue that Federal's claim is barred by the doctrine of *expressio unius* because the insurance policy between Federal and ONB Bank does not expressly mention subrogation within the "Mortgage Protection Insurance" section of the policy. Federal responds that the policy needn't mention subrogation because its right to subrogation springs from equity, not contract. Federal also points out that the policy mentions subrogation at least three times, including within the "Mortgage Protection Insurance" section, contrary to defendants' position.

"*Expressio unius est exclusio alterius*" means the expression of one thing is the exclusion of another. *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 548 (Okla. 2003). Under this doctrine, "when particular persons or things are specified in a law, contract, or will, an intention to exclude all others may be inferred." *Id*. The defendants argue that, because the insurance policy mentions subrogation within the "Mortgage Holders' Liability" section of the policy, but not the "Mortgage Protection Insurance" section, which is applicable here, Federal has no right of subrogation under the policy. This argument fails for at least two reasons. First,

---

[5]  The defendants argue that Federal's notice was ineffective because ONB was the holder of the note at the time of the notice and because Federal raised no objection to the October settlement agreement. The defendants cite no authority which supports their proposition that the notice was ineffective. In addition, the defendants have not submitted any evidence which demonstrates that Federal had any knowledge that the settlement agreement was occurring such that it could have raised a meaningful objection.

the defendants' construction of the policy would lead to an absurd result. Federal would be barred from seeking subrogation in the only situation where it is likely to do so: namely, where a mortgage has been impaired by negligence of the mortgagor. Yet Federal would be permitted to seek subrogation against its insured – an obvious impossibility given the nature of the claim. Second, and more importantly, Federal's right to subrogation has its genesis in equity; it is not dependent upon the policy. *See Mid-Continent Cas. Co. v. First Nat. Bank & Trust Co. of Chickasha*, 1975 OK 18, 531 P.2d 1370, 1375 (citing *Maryland Casualty Company v. King, Okl.*, 381 P.2d 153) ("the right of subrogation is not founded upon contract, express or implied, but upon principles of equity and justice"). The defendants' argument regarding the doctrine of *expressio unius* is thus without merit.

### E. Whether Federal's Claim is Barred by the Make Whole Doctrine

The defendants also argue that Federal's claim is barred under the "make whole" doctrine because ONB Bank's entire loss was not paid by Federal. Federal responds that it paid the full amount of the claim, i.e., the actual amount of impairment to the mortgage.

The make whole doctrine "has been described as prohibiting an insurer from recouping anything by way of subrogation or reimbursement until the insured 'has been made entirely whole through recovery of all compensatory damages to which he is entitled.'" *Am. Med. Sec. v. Josephson*, 15 P.3d 976, 979 (Okla. Civ. App. 2000) (quoting *Sunbeam–Oster Co., Inc. Group Benefits Plan v. Whitehurst*, 102 F.3d 1368, 1372 (5th Cir. 1996)). This doctrine includes payments made by the insurer *and* any third-party tortfeasor – a point which is fatal to the defendants' argument. *See id*. Even assuming Federal's payment to ONB Bank did not suffice under Oklahoma's make whole doctrine – an issue which the Court does not decide – the deficiency note executed by the defendants in favor of ONB Bank would suffice to make ONB

Bank whole.  The deficiency note covered the policy deductible, attorney fees, and costs which made up the remainder of ONB Bank's losses associated with the Property.  As such, the defendants' contention fails.

**F.  Whether Federal's Claim is Barred by the Voluntary Payment Doctrine**

Finally, defendants contend that Federal's payment of ONB Bank's insurance claim was voluntary because Federal had an "undisputed policy defense".  (Doc. 60, at 14).  Specifically, the defendants allege that "ONB Bank was aware in March 2009 of [C&R's] absence of insurance required under the ONB loan documents and/or insurance documentation problem." (Doc. 60, at 14).  Federal disputes that any valid defense to payment existed, as what was known to ONB Bank was merely a deficiency in documentation, not that there was no insurance coverage for the property.  The Court agrees with Federal's position on this issue.  The defendants have submitted no evidence demonstrating that ONB Bank was aware that the Property was uninsured.  In the absence of such a showing, the Court cannot say that Federal had an "undisputed policy defense" as the defendants contend.  Federal's claim is thus not barred by the voluntary payment doctrine.

**II.    Federal's Motion for Summary Judgment**

In light of the Court's finding that a genuine dispute of material fact exists with respect to the defendants' affirmative defense based upon the Workout Agreement (*see* page 10, *supra*), Federal's request for summary judgment on its subrogation claim is denied.

CONCLUSION

**IT IS THEREFORE ORDERED** that defendants' Motion for Summary Judgment and Brief in Support Thereof (Doc. 60) and plaintiff's Motion for Summary Judgment and Brief in Support (Doc. 59) are **denied**.  This case shall proceed to trial on the merits of Federal's

subrogation claim and the defendants' defense based upon the terms of the Workout Agreement.

A new scheduling order will be entered in accordance with the Court's October 28, 2013 order.

      **SO ORDERED** this 23rd day of January, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE